UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

_____
                                        )
MICHAEL BLACKWOOD,                      )
                                        )
                        Plaintiff,      )      Civil Action No. 10-10483
v.                                      )
                                        )
WELLS FARGO BANK, N.A. d/b/a            )
AMERICA'S SERVICING COMPANY, and        )
U.S. BANK, N.A. AS TRUSTEE,             )
                                        )
                        Defendants.     )
_____  )

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendants, Wells Fargo Bank, N.A., d/b/a America's Servicing Company, and U.S. Bank, N.A. as Trustee (collectively "defendants") submit this memorandum of law in support of their Motion for Judgment on the Pleadings as to counts I, II and III of Plaintiff's complaint.

INTRODUCTION

Plaintiff does not dispute that he defaulted on the terms of his mortgage loan or that the Defendant had the contractual right to foreclose on its security interest.  Plaintiff, however, claims that the Defendants' foreclosure was wrongful because they allegedly did not follow the various directives contained in the U.S. Treasury's Home Affordable Modification Program ("HAMP") prior to foreclosing. Regardless of the veracity of the Plaintiff's allegations, which Defendants dispute, Counts I, II, and III of Plaintiff's Complaint should be dismissed as a matter of  law because there is no private right of action for alleged violations of HAMP. Notwithstanding this fact, Plaintiff attempts an end-run on HAMP by indirectly asserting his HAMP claims through a third-party breach of contract theory and through a G.L. c. 93A claim. These theories and claims fail because Congress did not create, nor did it intend to create, a

private right of action. Further, Plaintiff's 93A claim fails because the consumer protection statute cannot be used as an end-run on Congress's purposeful omission of a private cause of action under HAMP. In addition, Plaintiff's contract-based claims fail because he is not an intended beneficiary of Wells Fargo's HAMP servicer participation agreement. Indeed, this Court recently rejected a borrower's claim that he was an intended third-party beneficiary of a HAMP servicer participation agreement. See McKensi v. Bank of America, N.A., 2010 WL 3781841 at *5-6 (D. Mass. Sept. 22, 2010). For these reasons, which are more fully set forth herein, this Court should dismiss Counts I, II, and III of Plaintiff's Complaint.

## FACTS

As they must, Defendants accept Plaintiff's well-pleaded factual allegations as true for the purpose of this motion only. In October 2005, Michael Blackwood ("Plaintiff") financed the purchase a two-family home with two loans secured by mortgages from Mortgage Lenders Network. The first mortgage was later assigned to U.S. Bank, as Trustee. America's Servicing Company, a division of Wells Fargo Bank, N.A., services the first mortgage.

Plaintiff defaulted on the terms of his first mortgage by failing to make monthly payments. In February 2009, with the assistance of Laura Pitts ("Pitts"), a foreclosure prevention counselor at the Mattapan Family Service Center, Plaintiff sought to obtain a loan modification under HAMP – a voluntary loan modification program for participating servicers. Wells Fargo voluntarily enrolled in HAMP by entering into a Commitment to Purchase Financial Instrument and Servicer Participation Agreement (the "Servicer Participation Agreement") with FNMA, acting as an agent for the United States.

Counts I-III of Plaintiff's Complaint are all premised on the allegation that Defendants did not comply with the HAMP program and that the foreclosure was wrongful. While

Defendants dispute the factual assertions, such issues are outside the scope of this motion because Plaintiff cannot assert a private right of action under HAMP.

ARGUMENT AND AUTHORITIES

**I.   The Rule 12(c) Standard.**

The Rule 12(c) standard for testing the legal sufficiency of a complaint on a motion for judgment on the pleadings is substantively the same as a Rule 12(b)(6) standard applied to motions to dismiss for failure to state a claim. See Curran v. Cousins, 509 F.3d 36, 43 (1st Cir. 2007); ITI Holdings v. Odom, 468 F.3d 17, 18-19 (1st Cir. 2006). Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a Complaint that fails to state a claim upon which relief can be granted. The United States Supreme Court clarified and, in effect, heightened Rule 8 pleading requirements when it expressly rejected the oft-cited "no set of facts" language of Conley v. Gibson, 355 U.S. 41 (1957). See Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1968-69 (2007) ("The [no set of facts] phrase is best forgotten as an incomplete negative gloss on an accepted pleading standard"). In Ashcroft v. Iqbal, the Supreme Court confirmed that the Twombly pleading standard applied to all civil actions. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (U.S. 2009). Now, in order to survive a motion to dismiss, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." Id. at 1949. A "claim has facial plausibility when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1955 (emphasis added). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. at 1955 (internally citations

omitted). Rule 8 now has teeth, and Plaintiffs fall markedly short of demonstrating a plausible entitlement to relief.

## II. HAMP Does Not Provide a Private Cause of Action.

### A. HAMP Background

HAMP is neither statutory nor regulatory. It is a program created by the United States Treasury in response to, and in conjunction with, the Emergency Economic Stabilization Act of 2008 (the "Act"). See 12 U.S.C. § 5219.[1] The Act grants authority to the Secretary of Treasury to acquire troubled assets such as mortgages and mortgage backed securities and to implement a plan to "maximize assistance for homeowners." The Act further provides how the Secretary "may" assist homeowners through loan modification.[2] The Act does not address the

---

[1] Section 5219 provides:

(a) Residential mortgage loan servicing standards.

(1) To the extent that the Secretary acquires mortgages, mortgage backed securities, and other assets secured by residential real estate, including multifamily housing, the Secretary shall implement a plan that seeks to maximize assistance for homeowners and use the authority of the Secretary to encourage the servicers of the underlying mortgages, considering net present value to the taxpayer, to take advantage of the HOPE for Homeowners Program under section 257 of the National Housing Act [12 USCS § 1715z-23] or other available programs to minimize foreclosures. In addition, the Secretary may use loan guarantees and credit enhancements to facilitate loan modifications to prevent avoidable foreclosures.

[2] Section 5220 provides:

(1) In general. To the extent that the Federal property manager holds, owns, or controls mortgages, mortgage backed securities, and other assets secured by residential real estate, including multifamily housing, the Federal property manager shall implement a plan that seeks to maximize assistance for homeowners and use its authority to encourage the servicers of the underlying mortgages, and considering net present value to the taxpayer, to take advantage of the HOPE for Homeowners Program under section 257 of the National Housing Act [12 USCS § 1715z-23] or other available programs to minimize foreclosures.

(2) Modifications. In the case of a residential mortgage loan, modifications made under paragraph (1) *may* include--
    (A) reduction in interest rates;
    (B) reduction of loan principal; and
    (C) other similar modifications...

4

Secretary's authority with respect to mortgages that he does not hold, own, or control. In addition, the Act notably does not explicitly or implicitly create any private rights of action for non-compliance.[3]

The congressional record illustrates Congress' intent and acknowledgement that the Act does not create any private right of action and that there is no private authority to enforce the Act's proposed modification program. Representative Kucinich noted:

> The central flaw of this bill is that *there are no stronger protections for homeowners and no changes in the language to ensure that the Secretary has the authority to compel mortgage servicers to modify the terms of mortgage*. And there are no stronger regulatory changes to fix the circumstances that allowed this to happen.
>
> We should have created a mechanism for our Government to take a controlling interest in mortgage-backed securities and use our power to work out a new deal for the homeowners. We could have done this. We should have done this. But we didn't …
>
> *It is not as though we had no choice but to pass the bill before us. We could have done this differently. We could have demanded language in the legislation that would have empowered the Treasury to compel mortgage servicers to rework the terms of mortgage loans so homeowners could avoid foreclosure.*

154 Cong. Rec. H 10712, 10766 (statement of Rep. Kucinich, Oct. 3, 2008) (emphasis added). Clearly, the above language shows that Congress chose <u>not</u> to include any mandates or requirements for servicers. The entire program is voluntary and without any private enforcement mechanism from the Act.

Purportedly based on its authority derived from the Act, the United States Treasury created HAMP. <u>See</u> Exhibit A, HAMP Supplemental Directive 09-01, Page 1. President Obama announced the new "Homeowner Affordability and Stability Plan" on February 18, 2009 in a purported attempt to help millions restructure their mortgages. <u>Id</u>. The Treasury

---

[3] Nor does the Act create any actual obligations for private (non-government) held and serviced loans.

5

then sought to apply its newly adopted HAMP not just to those mortgages which it held, owned, or controlled as prescribed by the Act, but also to those privately owned and serviced mortgages where it had no ownership or authority. The Treasury did so by presenting a so-called "Commitment to Purchase Financial Instrument and Servicer Participation Agreement" to loan servicers. See Exhibit B, Servicer Participation Agreement.[4] Despite its name, the Secretary did not actually purchase, hold, or control any interest in the privately owned and serviced mortgages that it sought to influence.

As an incentive to entice loan servicers such as Wells Fargo (ASC) to voluntarily enroll in the HAMP servicer participation agreement, the Treasury proposed to compensate servicers for each loan that they successfully modified. While the compensation terms are not included in the servicer participation agreement, they are set forth in the HAMP Directives. The HAMP Directives provide for servicer "Incentive Compensation." See HAMP Supplemental Directive 09-01. The Directive provides:

> A servicer will receive compensation of $1,000 for each completed modification under the HAMP. In addition, if a borrower was current under the original mortgage loan, a servicer will receive an additional compensation amount of $500 ... If a particular borrower's monthly mortgage payment (principal, interest, taxes, all related property insurance and homeowner's or condominium association fees but excluding mortgage insurance) is reduced by HAMP by more six percent or more, a servicer will also receive an annual "pay for success" fee for a period of three years...

Id. at 23. The servicer is not compensated for loans that it is unable to modify regardless of the reason for the unsuccessful modification, and the servicer is also not compensated if the borrower fails to complete the initial trial loan modification (even though the servicer complied with the program). In short, the servicer is only paid for successful modifications with

---

[4] The Servicer Participation Agreement is attached to the Complaint, and therefore may be considered for this Motion.

complete borrower compliance. Since HAMP's inception in early 2009, the Treasury has issued at least 15 supplemental directives consisting of hundreds of pages explaining the intricacies of HAMP including the net present value test, the complicated debt-to-income modification waterfall, and stringent reporting requirements.[5] None of these directives, however, has ever suggested that any private right of action exists under the terms of the program or any supplemental directive. Nor has any directive ever required investor participation. In fact, servicers do not have to follow HAMP when the investor guidelines prohibit it.

### B. Courts have Repeatedly Ruled that No Private Cause of Action Exists Under HAMP.

The wealth of federal courts that have considered the question have held that HAMP does not create a private right of action. See e.g., Watts v. National City Mortgage, Civil Action No. 3:10-cv-261 (W.D.N.C. September 20, 2010) (unpublished) (holding no private right of action exists under HAMP); Hart v. Countrywide Home Loans, Inc., 2010 WL 3272623 at 5 (E. D. Mich. Aug. 19, 2010) (entering summary judgment for defendant bank, holding HAMP does not compel modification and statute does not create private right of action); Duggar v. Bank of America/Countrywide Loans, 2010 WL 3258383 at *2 (E.D. Mo. August 16, 2010) (holding no private cause of action under HAMP, TARP or the Emergency Economic Stabilization Act of 2008); Hoffman v. Bank of America, N.A., 2010 WL 2635773 at *5 (N.D. Cal. June 30, 2010) (holding no private right of action to enforce HAMP); Robinson v. Wells Fargo Bank, N.A., 2010 WL 2534192 at *7 (D. Ariz. June 18, 2010)

---

[5] All of the Directives are available online at: https://www.hmpadmin.com/portal/programs/directives.html#3. On September 22, 2010, the former Supplemental Directives were superseded by the Making Homes Affordable Program Handbook for Servicers of Non-GSE Mortgages, available online at https://www.hmpadmin.com/portal/programs/hamp/servicer.html. The Handbook, however, did not exist at the time of Plaintiff's dealings with Wells Fargo because it took effect on September 22, 2010.

(holding no private cause of action under TARP); Thoreau de la Salle v. America's Wholesale Lender, 2010 U.S. Dist. LEXIS 36319 (E.D. Cal. Apr. 13, 2010) ("To the extent that plaintiff is trying to predicate her due process claims on violations of the Home Affordable Modification Act (HAMP), the Troubled Asset Relief Program (TARP), or the National Housing Act ("NHA"), there is no private right of action afforded under those statutes nor do they create a protected property interest"); Aleem v. Bank of America, 2010 U.S. Dist. LEXIS 11944, *9 (C.D. Cal. Feb. 9, 2010) ("Though Plaintiffs mention the National Housing Act and the HAMP, they fail to allege any elements related to violations of these statutes, nor do they provide a basis for concluding that a private right of action exists under these statutes."); Williams v. Geithner, 2009 U.S. Dist. LEXIS 104096 (D. Minn. Nov. 9, 2009) (finding HAMP did not create a protected property interest and noting "[t]he loan modifications are not an entitlement, but are linked to decisions that result in profits to taxpayers.  Congress did not intend to mandate loan modifications."); Pantoja v. Countrywide Home Loans, Inc., 640 F. Supp. 2d 1177, 1185 (N.D. Cal. 2009) ("...but nowhere in the judicial review section is there any mention of a right of action against non-governmental entities.  Thus, the Court finds that there is no express private right of action against TARP fund recipients.").  Simply put, nothing in the HAMP program, the participation agreement, or the extensive case law listed above contains any provision or recognition of any private right of action.  As such, Plaintiff's claims under HAMP must be rejected.

    **C.**    **Courts Have Rejected The Use Of State Consumer Protection Statutes To Create Claims Under Federal Statutory Schemes.**

Recently, the United States District Court for the Central District of California considered and rejected a plaintiff's attempt to use an Unfair or Deceptive Acts or Practices (UDAP) claim as an end-run on  HAMP's lack of private right of action.  In Aleem v. Bank of

8

America, N.A., plaintiffs alleged that defendants violated the California Business & Professions Code ("UCL" or California's version of G.L. c. 93A) prohibiting unlawful, unfair or fraudulent business practices by, among other things, failing to determine plaintiffs' eligibility for HAMP. Aleem v. Bank of America, N.A., 2010 U.S. Dist. LEXIS 11944 at * 9 (C. D. Cal. 2010). In rejecting plaintiffs' attempts to utilize the California UCL as method of obtaining defendants' liability, the court held "[t]he UCL cannot create a private right of action where none exists under the federal statute." Id. at 9.

In a similar context, the District of Massachusetts has also rejected plaintiffs' attempts to utilize G. L. c. 93A as a method of obtaining defendants' liability where none otherwise exists or was intended under the applicable statutory and regulatory scheme. In Catanzaro v. Experian Inform. Solutions, Inc., the plaintiff asserted claims under the Fair Credit Reporting Act ("FCRA") and its Massachusetts counterpart, § 54 of G. L. c. 93A, as well as a claim under G. L. 93A, § 2. Catanzaro v. Experian Inform. Solutions, Inc., 671 F. Supp. 2d 256, 257 (D. Mass. 2009). The court held that the FCRA preempted the plaintiff's claims under the Massachusetts counterpart to the FCRA, G. L. c. 93, § 54. Id. at 261. Rejecting plaintiff's argument that her G.L. c. 93A claim based on the same conduct should nonetheless survive, the Court ruled that the plaintiff's section 2 claims could not proceed, stating that it "will not sanction the use of Chapter 93A as an end run around state and federal statutory schemes." Id. at 262. In this way, the court has recognized that where no cause of action exists, based on preemption or congressional intent, it will not permit a "supplemental" G. L. c. 93A claim

9

alleging unfair and deceptive acts or practices based on the same conduct.[6] Therefore, Plaintiff cannot use G. L. c. 93A as an end-run around the lack of private action intended by Congress.

### D. HAMP's Scheme Is Too Ambiguous, Indefinite, Complicated, And Ever-Changing To Be Enforced Under G.L. c. 93A.

Even assuming arguendo that the Court allows Plaintiff to rely on G.L. c. 93A, HAMP's complex web of directives is too indefinite, vague, and continuously changing to be fairly and judicially enforced. In fact, since HAMP's inception in early 2009, the Treasury has issued at least fifteen supplemental directives, consisting of hundreds of pages, often creating new and additional requirements, contradicting prior directives, altering program components, creating new required forms, and also creating entirely new programs and sub-programs. Accordingly, the vague, contradictory, and ever-changing program, as well as the lack of any delineated statutory or regulatory scheme makes enforcement by a court nearly impossible. This reasoning lends further support to the conclusion that HAMP simply does not, and cannot, provide a private cause of action through G. L. c. 93A or otherwise.

---

[6] Defendants recognize the Supreme Judicial Court's Decision in Hershenow v. Enterprise Rent-A-Car Co. of Boston, Inc., 445 Mass. 790 (2006). In that case, the plaintiff argued that even though no private cause of action existed under G. L. c. 90, § 30E ½, a violation of that statute could nonetheless support a G. L. c. 93A claim for unfair and deceptive acts or practices. Id. at 795. The SJC determined the answer to this issue by looking at the legislative intent behind G. L. c. 90, §30E ½, enacted in 1990, after the enactment of G. L. 93A. Id. at 795. The court concluded that the while G. L. c. 90, §30E ½ does not provide any private remedies, the legislature did not intend for its enactment to entirely displace the private remedies afforded by G. L. c. 93A. Id. The court reasoned, "[w]e infer that the absence of a private right of action in the 1990 legislation 'stemmed from the Legislature's knowledge that such a consumer right of action already existed pursuant to [G. L.] c. 93A, § 9, rather than from a desire to bar such actions.'" Id. at 796. As such, the SJC's holding permitting a G. L. c. 93A claim based on a violation of a Massachusetts statute providing no private cause of action was based squarely on its reasoning that the Legislature was fully aware of G. L. c. 93A's rights and remedies when enacting G. L. c. 90, § 30E ½.

    The SJC's reasoning further supports the conclusion that HAMP (which is obviously not a state statute or even a federal statute) cannot support a private cause of action under G. L. c. 93A. First, it is entirely implausible that Congress and the Treasury, in enacting the legislation creating HAMP, were specifically cognizant of the Massachusetts law prohibiting unfair and deceptive acts or practices in trade or commerce and intended for 93A to provide the private remedy that HAMP omits. Second, it is also unlikely that Congress would have intended that HAMP form the basis for private causes of action under state consumer protection statutes where some states might permit such causes of action, and some states would not, thereby creating the possibility of inconsistent law based upon each state's consumer protection statute and its interpretation of HAMP. Accordingly, Hershenow is not only fully distinguishable from the instant case, but actually supports defendants' position that HAMP cannot create a private cause of action under G.L. c. 93A.

### III. Plaintiff Cannot Assert Contract-Based Claims (Counts II and III) Based on HAMP.

Plaintiff cannot establish that he is an intended beneficiary of the HAMP Servicer Participation Agreement between Wells Fargo and the United States sufficient to support a contract-based claim.

#### A. Plaintiff's Third-Party Beneficiary Theory Fails Because Plaintiff Is Not An Intended Beneficiary Of The Servicer Participation Agreement.

Since Plaintiff is at best a mere incidental beneficiary, and not an intended beneficiary, he cannot assert a third party breach of contract claim. The servicer agreement, upon which Plaintiff attempts to latch his claims, speaks directly to the question of intended beneficiaries. The agreement provides: "The Agreement shall inure to the benefit of and be binding upon *the parties to the Agreement* and their permitted successors-in-interest." See Exhibit B, Page 10. The agreement provides no expressed or implied language to the contrary. The agreement is governed by Federal law. See Exhibit B, Page, 10, Section 11A.

Federal courts look to the Restatement of Contracts in deciding issues of federal law. See Klamath Water Users Protective Assoc. v. Patterson, 204 F.3d 1206, 1210 (9th Cir. 1999) ("Federal law controls the interpretation of a contract entered pursuant to federal law when the United States is a party."); Massachusetts v. Mylan Laboratories, 357 F. Supp. 2d 314, 326 (D. Mass. 2005) ("A Court applying federal common law may look to the Restatement of Contracts for guidance regarding when a third party beneficiary may sue").[7] With respect to third party beneficiaries, the Restatement of Contracts provides:

> (1) Unless otherwise agreed between promissor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the

---

[7] Massachusetts state courts also look to the Restatement of Contracts for third party beneficiary rules. See Public Service Co. of N.H. v. Hudson Light and Power Dept., 938 F.2d 338, 341 (1st Cir. 1991) ("Massachusetts decisional law comports with the third party beneficiary rules in *Restatement (Second) of Contracts § 302...*")

11

> beneficiary is appropriate to effectuate the intention of the parties and ... the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
>
> (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

Restatement (Second) of Contracts § 302. The Restatement specifically explains third beneficiary rights in the context of government contracts that benefit the general public. Section 312, provides:

> (1) The rules stated in this Chapter apply to contracts with a government or governmental agency except to the extent that application would contravene the policy of the law authorizing the contract or prescribing remedies for its breach.
>
> (2) In particular, *a promissor who contracts with a government or governmental agency to do an act for or render service to the public is not subject to contractual liability to a member of the public* for consequential damages from performance or failure to perform ...

Restatement (Second) of Contracts § 313 (emphasis added). The comments and illustrations further provide, "Government contracts often benefit the public, but individual members of the public are treated as *incidental beneficiaries* unless a different intention is manifested. Id. at Comment (a).

While "intended beneficiaries" may be allowed in some circumstance to enforce a third party contract, incidental beneficiaries may not. Mylan Indust, 357 F. Supp. 2d at 329 (citing Harvard Law Sch. Coalition for Civil Rights v. President & Fellows of Harvard Coll., 413 Mass. 66 (Mass. 1992)). Thus, for the purposes of third party beneficiary claims, distinguishing between intended and incidental beneficiaries is crucial. Since the contract is a government contract, Plaintiff is presumed to be only an incidental beneficiary.

In Escobedo v. Countrywide Home Loans, Inc., plaintiff also attempted to bring a third-party beneficiary breach of contract claim against Countrywide for an alleged breach of its HAMP servicer participation agreement. Escobedo v. Countrywide Home Loans, Inc., 2009

U.S. Dist. LEXIS 117017 at *4 (S.D. Cal. 2009). Relying on the Restatement of Contracts and 9th Circuit precedent,[8] the Court noted that, "Parties that benefit from a government contract are generally assumed to be incidental beneficiaries, and may not enforce the contract absent a clear intent to the contrary." In order to permit individual enforcement, the contract must have included an expressed or implied intention to benefit the third party. Id. at *5-6. That agreement, like the one at issue in this case, "did not grant borrowers the right to enforce the Agreement" because it expressly stated that the benefits only inured to the "parties to the Agreement and their permitted successors-in-interest." Id. at *6. In addition, the Court noted that a borrower "would not be reasonable in relying on the Agreement as manifesting an intention to confer a right on him or her because the Agreement does not require that Countrywide modify eligible loans." Further, the Agreement only called for servicers to "consider" loans pursuant to guidelines and does not require Countrywide to actually modify loans. Id. As a result, that court granted Countrywide's motion to dismiss ruling that Plaintiff did not have standing to raise third-party beneficiary breach of contract claims.

Likewise, this Court recently a borrowers third-party contract beneficiary claim based on the HAMP Servicer Participation Agreement. McKensi, 2010 WL 3781841 at *5-6 (D. Mass. September 22, 2010) (holding plaintiff mortgagor not intended third-party beneficiary under HAMP); see also Vazquez v. Bank of America Home Loans, Civil Action No. 2:10-cv-00116 (D. Nev. August 23, 2010) (holding plaintiffs not intended third party beneficiaries of HAMP servicer participation agreement between bank and government); Wright v. Bank of American, N.A., 2010 WL 2889117 at *5 (N.D. Cal. July 22, 2010) (holding plaintiff not

---

[8] Klamath, 204 F.3d 1206, 1211 (9th Cir. 1999) ("To sue as a third-party beneficiary of a contract, the third party must show hat the contract reflects the express or implied intention of the parties to the contract to benefit the third party.")

13

third-party beneficiary entitled to assert breach of contract claim based on servicer participation under agreement HAMP and dismissing plaintiff's claim); Hoffman v. Bank of America, N.A., 2010 WL 2635773 at *3-5 (N.D. Cal. 2010) (holding plaintiff not third-party beneficiary under servicer participation agreement under HAMP); Villa v. Wells Fargo Bank, N.A., 2010 U.S. Dist. LEXIS 23741, *6-7 (S.D. Cal. March 15, 2010) (rejecting third party beneficiary relying on Escobedo reasoning).

Massachusetts decisions comport with the reasoning in Escobedo and other decisions denying third party beneficiary status to borrowers under HAMP. Like Escobedo, Massachusetts courts require "special clarity" and look to a "clear indication" to support a finding that a government contract intended to confer a benefit on a third party, particularly so when the third party is an individual member of the general public. See Mylan Laboratories, 357 F. Supp. 2d at 326 (distinguishing state third-party actions as opposed to individual third party actions for government contracts). Courts will not, however, allow a third party beneficiary claim to be used as an end-run on the enabling statutory scheme. Id. at 328. Massachusetts Courts further distinguish between third party contractual enforcement when the enforcing party is the Commonwealth or a municipality as opposed to individual members of the general public. While the former may assert third party beneficiary claims when there is intended close cooperation between the state and federal government inherent in the statutory scheme, private individuals may not. Id. at 329 (drawing distinction between states and individuals in state prescription drug overcharging case).

In this case, there is no expressed intent to create individual contractual enforcement powers in individual borrowers. The Agreement expressly provides that the benefits only inure to the parties to the Agreement. The Agreement is also consistent with the enabling statutory

14

scheme, which also does not intend to provide a private cause of action. Here, Plaintiff merely attempts an end-run on legislative intent by conjuring up a third-party beneficiary theory. Under the Restatement and interpreting case law, however, courts have drawn distinctions between government contracts and third party contracts such that individuals are presumed to be incidental beneficiaries unless some other intent is expressly indicated. No such intended beneficiary status is included in the contract. In this case, there is no expressed or implied intent that Plaintiff be afforded third-party beneficiary status. Moreover, there is nothing in the underlying agreement that guarantees Plaintiff a loan modification. The Agreement merely contemplates modification attempts and only pays when they are successful. Even then, however, that attempt is limited by prohibitions contained in the servicer's underlying servicing agreement with the loan holder. Plaintiff in this case is at best an incidental beneficiary, and therefore he lacks standing to assert a third-party beneficiary breach of contract claim.

> **B.    Principles of Statutory Construction and Review Of Cases Deciding Similar Claims Made In Connection With Other Government Programs Supports Denial of Third Party Beneficiary Claims.**

Plaintiff's third-party breach of contract claim is an indirect attempt to create a private enforcement mechanism where Congress chose not to. Congress could have done more, but it chose not to. Courts must limit the remedies under a statute or program to only the remedies provided even if those do not include a private right of action. See Grochowski v. Phoenix Constr., 318 F.3d 80, 85 (2d Cir. 2003) (in the absence of contrary congressional intent, court must conclude that Congress provided only the remedies it considered appropriate). Id.

In Grochowski, plaintiffs attempted to assert third-party beneficiary contract claims against defendants based on alleged failed payments for federally funded construction projects regulated by the Davis-Bacon Act ("DBA"). The Court, noting the great weight of authority

15

that no private right of action existed for violation of the DBA, held that Plaintiff's attempt to assert a violation of the DBA through a third-party breach of contract claim was inconsistent with the statute and congressional attempt. Therefore, the Court affirmed the trial court's dismissal of Plaintiff' third-party breach of contract claims.

Like the plaintiff in <u>Grochowski</u>, the Plaintiff in this case seeks to use the Servicer Participation Agreement as an indirect means to enforce HAMP. The problem, however, is that a private cause of action would be directly at odds with congressional intent, which clearly contemplated but chose not provide a private cause of action. It is also expressly contrary to the terms of the servicer participation agreement. Plaintiff should not be allowed to do an end-run on the statutory scheme.

**C.   Even Assuming Arguendo That Plaintiff Is A Third Party Beneficiary, There Is No Obligation to Modify Any Loan.**

Even if the Plaintiff is permitted to assert a third-party breach of contract action, the Servicer Participation Agreement cannot serve as the basis for any claim that Defendant was "required" to modify a loan. As discussed above, Congress recognized (and in some cases lamented) that neither the Act nor HAMP require servicers to do anything. Indeed, the entire program is voluntary. Moreover, investors, the actual interest holders in the mortgages, are not required to do anything, and the servicer may not modify any loans to which the investor does not permit modification. As a result, there is simply no general "contractual obligation" to modify any loan, and Plaintiff cannot as a third party assert rights which do not exist in the contract.

**D.   Breach of the Covenant of Good Faith and Fair Dealing.**

It is well settled that there can be no claim for breach of the implied covenant of good faith and fair dealing if there is no contract. See <u>Levenson v. L.M.I Realty Corp.</u>, 31 Mass.

App. Ct. 127, 131 (1991). As discussed above, Plaintiff is not a third-party beneficiary to defendants' Servicer Participation Agreement. Consequently, there can be no breach of the covenant of good faith and fair dealing with respect to that contract.

While unclear from the complaint, Plaintiff also appears to argue that defendants breached the duty of good faith and fair dealing with respect to his contractual relationship with the defendants arising out of the mortgage and loan documents by allegedly failing to adhere to HAMP and modify Plaintiff's loan. Plaintiff's claims still fail for the reason that there is simply no duty of good faith to modify a loan where the loan agreement does not contain any provision to do so. See Schwanbeck v. Federal Mogul Corp., 31 Mass. App. Ct. 390, 396 (1991) (citing Farnsworth, Contracts § 3.26 (1982) ("In the absence of an express undertaking to 'negotiate in good faith,' courts have been reluctant to impose a common law duty to do so.")); Carney v. Shawmut Bank, N.A., 72 Mass. App. Ct. 1117 at * 3 (Mass. App. Ct. 2008) (unpublished) (upholding summary judgment rejecting plaintiff's claim that bank failed to negotiate debt restructure or extensions regarding note in good faith, stating "[plaintiff] was in default. While [the bank] was free to negotiate with [plaintiff], it was under no obligation to do so, and was equally free to exercise the rights which it had acquired under the loan agreements."); Federal Nat'l Mortgage Assoc. v. Tong, 60 Mass. App. Ct. 1105 at *1 (Mass. App. Ct. 2003) (unpublished) (upholding dismissal of plaintiffs' claim that defendant bank breached duty of good faith and fair dealing by failing engage in loan modifications or "work out" option where loan agreement contained no such provision and parties did not "agree to agree" on modification, noting "[g]ood faith and fair dealing simply obligates each party to a contract not to act in such a way as to impair the other party's right to reap the fruits of the contract."); McKensi, 2010 WL 3781841 at *5-6 (D. Mass. September 22, 2010) (no breach of

obligation of good faith and fair dealing where "the claim is that the Bank sought to enforce the precise terms of the agreement, and acted according to its rights under the loan documents"); Sam v. American Home Mortgage Serv., 2010 WL 761228 at *6 (E. D. Cal. 2010) (dismissing claim where plaintiff alleged defendants breached duty of good faith and fair dealing by foreclosing on mortgage rather than seeking loan modification, noting "[a] claim for breach of the duty of good faith is a claim that a defendant deprived plaintiff of benefits reasonably expected by parties under the contract. Foreclosing upon a loan where such foreclosure is permissible by law and the terms of the loan agreement does not deprive plaintiff of any benefits reasonably expected by parties to the loan."); Rosemong Gardens Funeral Chapel-Cemetery, Inc. v. Trustmark Nat'l Bank, 330 F. Supp. 2d 801, 808 (S. D. Miss. 2004) (dismissing plaintiff's claim alleging defendants violated duty of good faith and fair dealing by refusing to restructure plaintiff's loan, noting that successful claim requires plaintiffs to "prove the existence of a binding contract which obligated [defendant] to reduce the payments."); see also Blue Hills Office Park v. JP Morgan Chase Bank, 477 F. Supp. 2d 366, 375 (D. Mass. 2007) (quoting Uno Rests., Inc. v. Boston Kenmore Realty Corp., 441 Mass. 376, 385, 805 N.E.2d 957 (2004)) ("The covenant may not, however, be invoked to create rights and duties not otherwise provided for in the existing contractual relationship, as the purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance").

Here, the loan agreement does not contain any provision regarding an agreement to modify the loan or to engage in good faith negotiations regarding a loan modification and does not even reference a modification or HAMP. Plaintiff received the "fruits of the contract"; namely, the loan monies and indeed, the mortgage and loan documents expressly provide the

mortgagee with the right to foreclose in the event of default. It is axiomatic that where a contract specifically authorizes one party to take a certain course of action, the implied duty of good faith and fair dealing cannot serve to override this express term of the bargained-for contract and require the parties to modify the contract. See Blue Hills Office Park, 477 F. Supp. at. 375. Accordingly, Plaintiff's claim for breach of the covenant of good faith and fair dealing fails as a matter of law.

## CONCLUSION

For the reasons set forth herein, Defendants respectfully request the Court enter judgment on the pleadings in favor of the Defendants on Counts I, II, and III of Plaintiff's complaint, or any portion of the Complaint that relies on HAMP or the Servicer Participation Agreement as a basis for the claim.

Respectfully submitted,
America's Servicing Company, a division of
Wells Fargo Bank, N.A., and
U.S. Bank National Association, as Trustee,

By their Attorneys,

/s/ Jeffrey S. Patterson
Jeffrey S. Patterson (BBO #671383)
jeffrey.patterson@nelsonmullins.com
David E. Fialkow (BBO #666192)
david.fialkow@nelsonmullins.com
Nelson Mullins Riley & Scarborough LLP
One Boston Place, 40th Floor
Boston, Massachusetts 02108
(617) 573-4700
(617) 573-4710 (fax)

## **CERTIFICATE OF SERVICE**

I, Jeffrey S. Patterson, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

Dated: October 14, 2010                                          /s/ Jeffrey S. Patterson