## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF MASSACHUSETTS

_____

|  |  |  |
|---|---|---|
| MICHAEL BLACKWOOD, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 10-10483 |
| v. | ) | |
| | ) | |
| WELLS FARGO BANK, N.A. d/b/a | ) | |
| AMERICA'S SERVICING COMPANY, and | ) | |
| U.S. BANK, N.A. AS TRUSTEE, | ) | |
| | ) | |
| Defendants. | ) | |

_____)

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff Michael Blackwood submits this memorandum of law in opposition to the Defendants' Motion for Judgment on the Pleadings as to Counts I, II and III of Plaintiff's complaint.  For the reasons set forth below, Plaintiff requests that Defendants' motion be denied and that he be permitted to proceed with his action.

### INTRODUCTION

In this action Plaintiff Michael Blackwood, a single father of six children, has alleged that his home was unlawfully foreclosed upon by Defendant Wells Fargo d/b/a America's Servicing Company ("Wells"), the servicer of his loan, and Defendant U.S. Bank N.A., as Trustee ("U.S. Bank"), the holder of the mortgage on his home.   Defendants attempt to argue that even if they violated the clear and detailed procedures of the U.S. Treasury's Home Affordable Modification Program ("HAMP"), in foreclosing on Plaintiff's home while he was being considered for a HAMP loan modification, they are not liable for the wrongful foreclosure.  Defendants unpersuasively allege that there is no private right of action under HAMP, and that borrowers are

1

not intended third party beneficiaries of the contract between servicers and Treasury.

Defendants arguments must fail because the congressional record evidences a clear intent to

allow a private right of action under HAMP, and the various HAMP guidance documents

incorporated into the Servicer Participation Agreement ("SPA") entered into by Defendant

Wells, manifest an unambiguous intent to make borrowers like the Plaintiff, an *intended*

beneficiary, entitling him to enforce violations of the program's directives.  To argue that

borrowers facing foreclosure and in need of loan modifications to be able to remain in their

homes, were **not** the *intended* beneficiaries of HAMP and its hundreds of pages of detailed

guidance and directives, defies logic and the express purpose of the HAMP program.

HAMP is a federal program that was introduced by the U. S. Department of the Treasury

pursuant to the Emergency Economic Stabilization Act of 2008 (the "EESA") to assist at-risk

homeowners by modifying their mortgages to avoid foreclosure.  Under the terms of the

program, the Treasury Department provides financial incentives to banks to reduce homeowners'

monthly mortgage payments to affordable levels.  Defendant Wells entered into the SPA on

April 13, 2009.[1]  By signing this SPA, Defendant agreed to "participate in the Program as a

Participating Servicer on the terms and subject to the conditions set forth herein".  See SPA,

Exhibit 1 at 1. The SPA clearly states that Defendant shall perform loan modification services in

accordance with "the Program guidelines and procedures issued by Treasury" and "any

supplemental documentation, instructions, bulletins, letters, directives or other communications."

See Exhibit 1 at 1A.

Though Treasury has issued various directives and guidance to its participating servicers

refining the evaluation process for HAMP loan modifications, it has always been a core rule that

---

[1]  Formally titled, "Commitment To Purchase Financial Instrument and Servicer Participation Agreement for the Home Affordable Modification Program under the Emergency Economic Stabilization Act of 2008."

a servicer cannot foreclose on a mortgage while considering a borrower for a HAMP modification.  See Supplemental Directive 9-01, Exhibit 2 (servicers are required to evaluate homeowner's HAMP eligibility prior to proceeding with foreclosure). That did not happen in this case.  Defendant Wells on several occasions misrepresented to Plaintiff's housing counselor that it would seek to stop the foreclosure, but did not do so.  See Affidavit of Laura Pitts, Exhibit 3 (detailing her efforts to obtain a HAMP modification for Plaintiff and to postpone the foreclosure sale).  These deliberate misrepresentations to the Plaintiff clearly constitute a violation of the Massachusetts Consumer Protection Act, M.G.L. c.93A, separate and apart from the claims arising under HAMP, because these statements caused Plaintiffs to forgo other efforts to save his home from foreclosure.   Defendants now seek to prevent Plaintiff from challenging their non-compliance with HAMP requirements, and their unfair and deceptive practices.

## STATEMENT OF FACTS

Plaintiff Michael Blackwood, a 45 year-old, single father of six children aged 6 to 23, originally from Jamaica, purchased the two-family home at 331 Fuller Street, Dorchester, MA, in October 2005 for $520,000.  He received two loans from Mortgage Lenders Network that he was never able to afford and did not understand.  One loan was an adjustable rate mortgage for $416,000 with an initial teaser rate of 7.4%; and the other was a 15 year fixed rate loan for $104,000 at an interest rate of 11.85%.  These loans included a large balloon payment that Mr. Blackwood did not learn of until well after he received the loans. Compl.¶¶11-16.  Defendant Wells subsequently acquired the servicing of Mr. Blackwood's loans, and Defendant U.S. Bank, as Trustee, acquired the loans, and is the current holder.

Mr. Blackwood's payments on his first and second mortgages eventually increased to over $5,000 a month.  As the economy worsened and his contracting business declined, he was

not able to continue paying these enormous mortgage payments. Compl. ¶ 17. In February 2009 he began working with Laura Pitts, a housing counselor at ABCD/Mattapan Family Services, who submitted a HAMP application and required documentation on his behalf.  See Exhibit 3 at ¶ ¶3,7,8, 10,11.  Ms. Pitts repeatedly requested that the foreclosure sale scheduled for December 7, 2009, be postponed so that Mr. Blackwood's application for a HAMP modification could be fully evaluated, as required by HAMP guidelines.  She was repeatedly assured by Wells' representatives that the foreclosure would be postponed.  Exhibit 3, at  ¶¶12, 13,14, 15,16, 17. Ms. Pitts was subsequently informed that Defendant Wells did not request that the foreclosure be postponed, until  it was "too late" and the foreclosure sale already occurred.  See Exhibit 3, at 21. As there were no third-party purchasers, Defendant U.S. Bank purchased the property at the foreclosure sale for $235,000. Compl. at ¶ 48.  Counsel for Mr. Blackwood attempted to get the foreclosure rescinded to no avail and the instant case was filed after Defendants brought eviction proceedings against Mr. Blackwood and his family.

### THE RULE 12(C) STANDARD

The standard for granting or denying a motion under Rule 12(c) is very similar to the Rule 12(b)(6) standard. *Estate of Bennett v. Wainwright*, 548 F.3d 155, 164 (1st Cir. 2008). A court may only grant the defendant's motion for judgment on the pleadings where it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Curran v. Cousins*, 509 F.3d 36, 43 (1st Cir. 2007). In deciding a Rule 12(c) motion, the court shall view the facts in the pleadings in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor. *Id*. Plaintiff in this case has pled factual allegations that raise the right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). The court may consider the pleadings,

documents incorporated therein, documents the authenticity of which are not disputed by the parties, and documents central to plaintiffs' claim. *Curran,* 509 F.3d at 44. The facts as pled in this case are sufficient to allow the court to draw a reasonable inference in favor of Plaintiff, and the motion for judgment on the pleadings must be denied.

## ARGUMENT

### A.  BORROWERS MAY ENFORCE HAMP VIOLATIONS THROUGH PRIVATE ACTIONS

Defendants attempt to argue that Plaintiff  has no legal remedy for the unlawful foreclosure of his home in violation of HAMP guidelines.  However, HAMP guidelines contemplate that borrowers may bring private lawsuits for violation of HAMP and several courts have so found.  See, *U.S. Bank N.A. v. Bleckinger, et al,* 10-CV-0095 (C.P. of Seneca Cnty. Ohio filed Oct. 13, 2010) (finding that homeowners have a remedy under HAMP) ; *GMAC Mortgage v. Riley*, 500-09 Fe (Super. Ct. VT filed Mar. 5, 2010) (requiring participating servicers to show compliance with HAMP prior to foreclosure).  Defendants voluntarily chose to become participating servicers in HAMP, and are therefore bound to follow the program's rules.

#### i.  A Private Right Of Action Is Implied Under The HAMP Guidelines Created Pursuant To The Emergency Economic Stabilization Act Of 2008 ("EESA").

A court may imply a private right of action when it finds congressional intent to create a private remedy.  See *Touche Ross & Co. v. Redington, Trstee.*, 442 U.S. 560, 578 (1979);  see also *Thompson v. Thompson*, 484 U.S. 174, 179 (1988) ("Our focus on congressional intent does not mean that we require evidence that Members of Congress, in enacting the statute actually had in mind the creation of a private cause of action.").  An intent to create a private remedy arises when allowing a private right of action is "compatible with the purpose and context of the legislative scheme." *Thompson*, 484 U.S. at 183.

Here, the congressional record of the EESA reflects a clear intent to benefit homeowners and provide adequate remedies to prevent foreclosures.  See generally 154 Cong. Rec. H 10712 (Oct. 3, 2008).  Representative Jackson-Lee stated the ultimate goal of the EESA is to "help as many Americans as possible," a sentiment repeatedly expressed by others.[2] *Id.* at 10779.   While the EESA does not provide an explicit private right of action, a private right of action is congruent with the congressional intent of helping homeowners to the greatest extent possible to avoid foreclosure.

Other Massachusetts District Court judges, in several recent cases,  have permitted claims under HAMP to survive.[3]  See, *Torchetti v. GMAC Mort., LLC,* No. 10-cv-11581-NG (D. Mass. Sep. 20, 2010); *Manfra v. Bank of Am.*, N.A., No. 09-cv-11760-DPW (D. Mass. Apr. 28, 2010). In *Torchetti*, Chief Judge Wolf, granted a temporary restraining order to prevent foreclosure after being presented with evidence that the bank breached its own SPA with Treasury, stating that the borrowers "have a likelihood of success on the merits of their claims." Id. at *1.  In *Manfra*, the court denied without a written opinion the bank's motion to dismiss the homeowners claims arising from a failure to follow HAMP guidelines.

Likewise, several other courts have allowed borrowers' claims under HAMP to survive. See, *Stanton v. Ocwen Loan Servicing*, LLC, No. 10-2-DAK, 2010 WL 3824640 (D. Utah Sept. 28, 2010) (denying bank's motion to dismiss  violation of duty of good faith and fair dealing, due to oral contract with bank related to HAMP to refrain from foreclosing until homeowners were

---

[2] Nearly all Representatives who debated the EESA expressed the sentiment that the EESA was designed to help homeowners avoid foreclosure.  For example, Representative Hoyer stated that the EESA is intended to "help homeowners renegotiate their mortgages to prevent a further flood of 2 million projected foreclosures."  *Id.* at 10775. Likewise, Representative Waters emphasized the importance of "protecting homeowners and doing the kind of modifications that will keep people in their homes who have these adjustable rate mortgages even before they reset."  *Id.* at 10772.

[3] In *Durmic v. J.P. Morgan Chase Bank*, N.A., No. 10-cv-10380, 2010 U.S. Dist. LEXIS 124603 (D. Mass. Nov. 24, 2010), Judge Stearns allowed contractual claims based on Trial Payment Plans created pursuant to HAMP, and M.G.L. c.93A claims, to survive a motion to dismiss.

first evaluated for HAMP); *Hanson v. Wells Fargo Home Mortg.*, 10-cv-00318 2010 WL 3310615 (E.D. Ark. Aug. 18, 2010) (denying bank's motion to dismiss HAMP claims); *Reyes v. Saxon Mortg. Services, Inc.*, 09-cv-1366, 2009 WL 3738177 (S.D. Cal. Nov. 5, 2009) (denying bank's motion to dismiss HAMP claim); *Gaitan v. Mortgage Elec. Registration Sys.*, No. 09-cv-1009, 2009 WL 3244729 (C.D. Cal. Oct. 5, 2009) (allowing claim for negligent servicing related to violation of HAMP); *Faulkner v. Onewest Bank*, No. 3:10-cv-12, 2010 WL 2472275, Slip Copy (N.D.W. Va. June 16, 2010) (denying bank's motion to dismiss homeowners' claims for breach of HAMP loan modification contract).

The cases Defendants rely on for their contention that there is no private right of action under HAMP, are clearly distinguishable.  See, *e.g. Hart v. Countrywide Home Loans, Inc.*, No. 09-12088, 2010 WL 3272623 at 5 (E. D. Mich. Aug. 19, 2010) (refusing to retroactively apply HAMP and stating in dicta there is likely no private right of action under HAMP); *Williams v. Geithner*, No. 09-cv-1959, 2009 U.S. Dist. LEXIS 104096 (D. Minn. Nov. 9, 2009) (denying an action under HAMP brought as a due process violation); *Aleem v. Bank of America*, No. 09-cv-01812, 2010 U.S. Dist. LEXIS 11944, *9 (C.D. Cal. Feb. 9, 2010) (finding that the California consumer protection statute, which is not analogous to M.G.L. c. 93A, could not be used to enforce a HAMP action); *Robinson v. Wells Fargo Bank, N.A.*, No. 09-cv-2066, 2010 WL 2534192 at *7 (D. Ariz. June 18, 2010) (focusing on TARP as a whole).  These cases are unpersuasive and do not give adequate weight to the *Thompson* standard, ignoring the clear congressional intent to benefit homeowners facing foreclosure and implying a private right action.

**ii.      Regardless Of Whether There Is A Private Right Of Action Under HAMP,
An Action For Violations of HAMP Under M.G.L. c. 93A Is Appropriate.**

Blackwood has set forth a colorable claim for violation of the Massachusetts Consumer

Protection Act, under well-settled First Circuit and Massachusetts precedent.  Similar statutory

violations have been held to be per-se violations of M.G.L. c. 93A. See, *French v. Corporate*

*Receivables, Inc.*, 489 F.3d 402, 404 (1st Cir. 2007) (violation of the Fair Debt Collection

Practices Act constitutes a per se violation of M.G.L. c. 93A); *In re TJX Cos. Retail Security*

*Breach Litig.*, 524 F. Supp. 2d 83, 93 (D. Mass. 2007) (violation of Federal Trade Commission

Act violates M.G.L. c. 93A). Massachusetts courts have likewise held that violations of state

laws which, in and of themselves, provide no private right action are actionable under M.G.L. c.

93A. See, *Dodd v. Commercial Union Ins. Co.*, 373 Mass. 72 (1977) (finding a violation of

M.G.L. c. 175D can be enforced through M.G.L. c. 93A); *Hershenow v. Enterprise Rent-A-Cat*

*Co. of Boston, Inc.*, 445 Mass. 790, 791 (2006) (finding M.G.L. c. 93A an appropriate

enforcement mechanism for M.G.L. c. 90, § 32E ½).

HAMP was created pursuant to the EESA, and, as one of its central purposes is to

"preserve[] homeownership …..", it essentially is a consumer protection law. 15 U.S.C. § 5201

(2)(B).  Most importantly, HAMP was created in order to "maximize assistance for homeowners

and use the authority of the Secretary to encourage the servicers of the underlying mortgages …

to minimize foreclosures." 15 U.S.C. § 5219 (a)(1).  In addition to complying with HAMP rules,

the HAMP guidance specifically requires that Wells comply with all state and federal laws,

including the Federal Trade Act. See Exhibit 2, at p. 12.

Pursuant to Massachusetts Regulations, an entity that "fails to comply with existing

statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or

welfare…" violates M.G.L. c. 93A.  Code of Massachusetts Regulations, 940 CMR § 3.16(4).

Furthermore, a practice is unfair if it falls within an established concept of unfairness, is unethical or oppressive, or causes substantial injury to consumers. See 940 CMR § 3.16. Therefore, when Defendants failed to follow the HAMP guidelines, they violated M.G.L. c. 93A.

Contrary to this analysis, Defendants cite to *Cantazaro v. Experian Inform. Solutions, Inc.*, an inapposite case where the plaintiff was barred asserting from a M.G.L. c. 93A claim to enforce a violation of the Fair Credit Reporting Act ("FCRA"). Importantly, the *Cantazaro* Court found that the FCRA expressly preempted all state laws. 671 F. Supp. 2d 256, 260 (D. Mass. 2009). Because of this preemption, the FCRA, which does not have its own private right of action, could not be enforced through M.G.L. c. 93A. *Id.* at 262.

Here, HAMP does not preempt state law, but rather the program guidance embraces state law. Further, preemption should not be implied unless there is a "direct conflict between federal and state law." *Boyle v. United Technologies Corp.*, 487 U.S. 500, 504 (1988). Since no such conflict exists here, any lack of an explicit private right of action under HAMP should not preclude a lawful action brought under state law. Because Blackwood has set forth a colorable action under M.G.L. c. 93A for violations of HAMP, Count I should not be dismissed.

**B.     BORROWERS ARE THE INTENDED BENEFICIARIES UNDER THE HAMP LOAN MODIFICATION PROGRAM.**

While as a general rule, a third party may not enforce a contract, unless that party is an intended third party beneficiary. Intended third party beneficiary analysis hinges on the intent of the parties in drafting the contract. See, *In re Pharm. Indus. Average Wholesale Price Litig.*, 339 F. Supp. 2d 165, 178 (D. Mass. 2004) ("The crux in third-party beneficiary analysis is the intent of the parties."). When intent to benefit third parties is not expressly stated in the contract, evidence of that intent may be induced from the context. *Roedler v. Dep't of Energy,* 225 F.3d 1347, 1352 (Fed. Cir. 2001). Here, the SPA and the HAMP directives which are incorporated

within the SPA, show a clear intent of the parties to benefit homeowners who are at risk of

foreclosure by creating a systematic approach to loan modifications and providing financial

incentives to borrowers for remaining current under the mortgage.  See Exhibit 1, at 4(B)(ii)

("Fannie Mae shall remit **incentive payments** to Servicer…**for the credit of borrowers** under

their respective mortgage loan obligations."); see also  Exhibit 1 (describing HAMP as "a

national modification program aimed at **helping 3 to 4 million at-risk homeowners**…")

(emphasis added).  Furthermore, when a governmental contract is created pursuant to statute, the

purpose and policy behind the statute are relevant to show the parties' intent.  When the

governmental contract is ambiguous as to remedies, a third party may enforce it "so long as this

is consistent with the statutory scheme, and not an end-run on it." *Massachusetts v. Mylan

Laboratories*, 357 F. Supp. 2d 314, 328 (D. Mass 2005).

### i.      The SPA Clearly Intends To Benefit Homeowners Like Blackwood.

When the federal government is a party to a contract, federal law controls the

interpretation of the contract.  *Klamath Water Users Protective Assoc. v. Patterson*, 204 F. 3d

1206, 1210 (9th Cir. 1999).  However, in applying federal law, the Court may also look to state

law.  28 U.S.C. § 1652;  *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 728 (1979).  Both

federal law and Massachusetts law are guided by the Restatement (Second) of Contracts.  See,

*Klamath,* 204 F. 3d at 1211; *Public Service Co. of N.H. v. Hudson Light and Power Dept.*, 938 F.

2d 338, 341 (1st Cir. 1991).  Restatement (Second) of Contracts § 302(1) defines an intended

beneficiary:

> Unless otherwise agreed between promisor and promisee, *a beneficiary of a promise is
> an intended beneficiary if recognition of a right to performance in the beneficiary is
> appropriate to effectuate the intention of the parties* and…the circumstances indicate
> that *the promisee intends to give the beneficiary the benefit of the promised
> performance.*

Further, section 313 states that this rule of construction applies to governmental contracts

"except to the extent that application would contravene the policy of the law authorizing the

contract or prescribing remedies for the breach."  Restatement (Second) of Contracts § 313(1)

(2010).  The comments to this section provide that "individual members of the public are treated

as incidental beneficiaries unless a *different intention is manifested*."  *Id*. at Comment (a).

In the SPA, the parties have manifested the "**different intention**" necessary to give

homeowners, like Blackwood, third party beneficiary status.  See, *In Re Pharm.*, 339 F. Supp. 2d

at 178 ("The intended, party need not be specifically or individually identified in the contract,

but must fall within a class clearly intended by the parties to benefit from the contract.")(*citing*

*Klamath Water Users Protective Assoc. v. Patterson*, 204 F.3d 1206, 1211); *McCarthy v. Azure*,

22 F.3d 351, 362 (1st Cir. 1994) (analyzing whether plaintiff was in a category of intended

beneficiaries).  The SPA contains provisions that obligate Wells to take specific actions and to

act in direct benefit of homeowners like Mr. Blackwood. Within the SPA, there are two specific

promises that Blackwood is intended to benefit from.

First, he is intended to benefit from the promise that the "[Wells Fargo] *shall* perform the

Services for *all* mortgage loans it services, whether it services such mortgage loans for its own

account or another party, including any holders of mortgage-backed securities."  Exhibit  1, at

2(A).  The SPA further defines "Services" as:

> *loan modification and other foreclosure prevention services described* (i) in Financial
> Instrument attached hereto as Exhibit A; (ii) *the Program guidelines* and procedures
> issued by the Treasury, including without limitation, the net present value assessment
> requirements of the Program; and (iii) *any supplemental documentation, instructions,*
> *bulletins, letters, directives, or other communications, including, but not limited to,*
> *business continuity requirements, performance requirements and related remedies,*
> *issued by the Treasury, Fannie Mae, or Freddie Mac in order to change, or further*
> *describe or clarify the scope of, the rights and duties of the Participating Servicers in*
> *connection with the Program.*

*Id.* at 1 (A).  In other words, the SPA explicitly incorporates the HAMP Supplemental

Directives and program guidelines.  Read as a whole, as the parties intended by the clear

language of the contract, the SPA explicitly intends to benefit homeowners by creating a

program whereby participating servicers are <u>required to consider</u> borrowers for loan

modifications <u>and to cease foreclosure proceedings</u> while the modification is under consideration

   The second promise that intentionally benefits borrowers such as Blackwood is the

promise to pay incentive payments to borrowers who remain current under modified mortgages.

Borrowers who successfully pay their modified payments are entitled to $1,000 each year for a

period of five years. Exhibit 1, at 4(B)(ii).  Again, this broad obligation is more clearly defined in

Supplemental Directive 09-01, which is explicitly incorporated into the SPA.  The incentive

payment, or "pay for performance" will be paid to borrowers who remain current on a modified

loan.  Exhibit 2, at 24.  "A borrower can ***earn the right to receive a "pay for performance"***

***principal balance reduction payment*** for payments made during the first five years following

execution of the Agreement…" *Id*.  The incentive payment is a clear and direct benefit to a third

party, the borrower.

   **ii.**  **This Court Should Find Blackwood Is An Intended Third Party Beneficiary**
    **Because It Is Consistent With the Statutory Scheme To Assist Homeowners**

   Courts have upheld intended third party beneficiary claims that arise from a

governmental contract when there is clear intent to benefit a class in the contract, as well as, in

the purpose of the statute.  See generally, *Massachusetts v. Mylan Laboratories*, 357 F. Supp. 2d

314 (D. Mass. 2005) (clearly benefitting the States);  *Ayala v. Boston Housing Authority*, 536

N.E. 2d 1082 (Mass. 1989) (clearly benefitting residents in low-income housing); *Busby Sch. of*

*the N. Cheyenne Tribe v. United States*, 8 Cl. Ct. 596 (1985) (clearly benefitting high school-

aged Native Americans).  In doing so, the courts have looked to the contractual language, the

statute that induced the contract, and the broad policy that embodies the contract.  See, *Alpine County v. United States*, 59 Fed. Cl. 610, 613 (2004) (intend can be found in the "words of the contract or otherwise be evident from the considerations that gave rise to the creation of the contract in the first instance.").  Furthermore, when a contract is ambiguous as to remedies, this Court has held that a third party beneficiary may enforce it "so long as this is consistent with the statutory scheme, and not an end-run on it."  *Mylan Laboratories*, 357 F. Supp. 2d at 328.

Here, Blackwood can show that the SPA was drafted pursuant to the EESA, as the first recital of the SPA explicitly names the Act, illustrating that the SPA was drafted in contemplation of the EESA.   See, Exhibit 1.  Therefore, the purpose and policy behind the EESA are relevant to determining the intent of the parties of the SPA.  The EESA's explicit purpose is to "preserves homeownership," and this purpose is effectuated through the HAMP loan modification program, relying on private servicer participation.  12 U.S.C. § 5201(2)(B).  Accordingly, homeowners, such as Blackwood, were the persons intended to benefit from loan modifications under HAMP.

In *Mylan Labs.*, this Court allowed a third party beneficiary to enforce a governmental contract that was enacted pursuant to statute when enforcement was "consistent with the statutory scheme, and not an end-run on it."  *Mylan Labs.*, 357 F. Supp. 2d at 328.  In *Mylan Labs.*, the Commonwealth argued that it was an intended third party beneficiary in agreements created between the federal government and pharmaceutical manufacturers that provided rebates to the states based on the states' payments for manufacturer's drugs.  *Id.* at 327.  Because the statute was ambiguous as to remedies, this Court construed it "in a manner which best effectuates the statutory scheme."  *Id.* at 329.  Thus the Court allowed the Commonwealth to enforce the agreements, finding that its objective was consistent with the congressional objective of the

statute in reducing the cost of Medicare drugs. *Id.* The Court also allowed third party enforcement because it did not impose any additional or contrary requirements on the parties. *Id.* Likewise in this case, allowing a third party beneficiary action is consistent with statutory intent.

Additionally, in *Ayala v. Boston Housing Authority*, the Supreme Judicial Court of Massachusetts found that low-income Section 8 tenants were entitled to enforce governmental contracts as intended beneficiaries. *Ayala v. Boston Housing Authority*, 404 Mass. 689, 700-701 (1989). The *Ayala* Court relied heavily on the statutory intent, finding that to rule that the tenants were not intended third party beneficiaries "would mock the very goals which Congress and HUD set out to achieve through the Section 8 program." *Id.*

Allowing individual homeowners the right to enforce the SPA as intended third party beneficiaries is consistent with HAMP's objective of preserving homeownership; while denying homeowners that right would contravene statutory intent. Like the standard stated in *Mylan Labs.*, Blackwood does not seek to impose any additional or contrary requirements than those in the SPA. Blackwood merely seeks to enforce the promise that Defendants made to consider him for a loan modification and to stop foreclosure actions while doing so. Like *Ayala*, to hold that Blackwood is not an intended third party beneficiary would "mock" statutory intent because servicers may continue to foreclose without considering HAMP modifications; thus contravening the intent to preserve homeownership.

### iii.    Defendants' Reliance On Other HAMP Decisions Is Misguided.

Defendants rely on *McKensi v. Bank of America, N.A.,* for the proposition that this Court has explicitly rejected an intended third party beneficiary theory under a HAMP servicer participation agreement. However, this was a case that was not fully pled or briefed. In *McKensi,* based on a very skimpy record, this Court stated that the homeowner "failed to allege

any facts which would support the conclusion that he is the intended beneficiary of the (undefined) contract." *McKensi v. Bank of America, N.A.*, No. 09-cv-11940, 2010 WL 3781841 at *5 (D. Mass. Sept. 22, 2010). The homeowner in *McKensi* failed to cite to any specific language in the servicer participation agreement, or even to identify the contract that would give rise to an intended third party beneficiary claim. *Id.*

Unlike the plaintiff in *McKensi*, Blackwood has specifically referred to the SPA executed between Wells and Fannie Mae and cited to directives, which are explicitly incorporated into the SPA, in his complaint. *See* Compl. ¶ 22-24. Blackwood has alleged sufficient facts to support that he is an intended third party beneficiary of the SPA and can enforce the SPA, therefore his claims should survive.[4]

Defendants also rely heavily on *Escobedo v. Countrywide Home Loans, Inc.* for the proposition that borrowers are not intended third party beneficiaries to contracts made pursuant to HAMP. Importantly, in *Escobedo*, the borrower asserted an action against the lender for <u>failure to modify his loan.</u> *Escobedo,* No. 09-cv-1557, 2009 U.S. Distr. LEXIS 117017 at *2, (S.D. Cal.. Dec 15, 2009). The court found that it would not be reasonable for Escobedo to rely on the agreement because the SPA does not "*require* that Countrywide modify eligible loans," but rather it required the servicer "to consider all eligible loans under the program guidelines." *Id.* at *7.

In contrast to the borrower in *Escobedo*, Blackwood is asserting a claim that Wells had an <u>obligation to consider</u> him for a HAMP modification, and to <u>suspend</u> a foreclosure action while evaluating his application. These obligations are clear in the SPA (and incorporated guidance) executed between Wells and Treasury. Consistent with *Mylan Labs.*, Blackwood is not imposing

---

[4] Blackwood also recognizes that this Court recently rejected a third party beneficiary claim under HAMP in *Menorah v. Bank of America, N.A.*,  No. 10-11461 (D. Mass. Nov. 1, 2010).  However, in *Menorah*, the plaintiff failed to oppose the motion to dismiss.

an additional requirement upon Wells beyond what is required by the SPA  Therefore,

Blackwood's reliance on the SPA is reasonable and this case is distinguishable from *Escobedo*.

Furthermore, the Southern District of California has ruled inconsistently on whether

borrowers have a third party beneficiary claim under HAMP.  See, *Reyes v. Saxon Mortgage*

*Services, Inc.*, No. 09-cv-1366, 2009 WL 3738177 (S.D. Cal. Nov. 5, 2009) (finding that the

homeowner has plead sufficient facts to show he is an intended beneficiary by identifying the

contract and attaching it to the complaint); *Marques v. Wells Fargo Home Mortgage, Inc.*  No.

09-cv-1985, 2010 WL 3212131 (S.D. Cal. Aug. 12, 2010).

In *Marques,* the court, in a thorough analysis, found that the borrower was an intended

third party beneficiary of the same SPA at issue in this case.  See, 2010 WL at *7.  Like

Blackwood, Marques argued that Wells breached the SPA by foreclosing on his mortgage and

refusing to consider a loan modification.  *Id.* at *1.  The *Marques* court considered the statutory

basis of the contract as well as the language of the contract to determine the intent of the parties,

finding that "reading the Agreement in its entirety evinces a clear intent to directly benefit

eligible borrowers."  *Id.* at *4.  The *Marques* court properly determined that the borrower was an

intended third party beneficiary of the SPA by examining both the contract and the statutory

basis for the contract.  This Court should follow the *Marques* reasoning.

Defendants also cite to a string of cases that hold the borrower is not an intended third

party beneficiary.  These cases are unpersuasive.  In a several of these cases, there is little

analysis.  See, *Villa v. Wells Fargo, N.A.*, No. 10-cv-81, 2010 U.S. Dist. LEXIS 23741 (S.D. Cal.

Mar. 15, 2010) (merely adopting the reasoning of *Escobedo*); *Vasquez v. Bank of America Home*

*Loans*, No. 10-cv-00116, 2010 U.S. Dist. LEXIS 86654 (D. Nev. Aug. 23, 2010) (stating that

plaintiffs have not plead facts to demonstrate they are intended third party beneficiaries);

*Hoffman v. Bank of America, N.A.*, No. 10-cv-2171, 2010 WL 2635773 (N.D. Cali June 30,

2010) (relying on the plaintiff's lack of citing to a favorable HAMP case to support his third

party beneficiary theory).  Due to the lack of analysis, and the clear evidence that Mr.

Blackwood was an intended beneficiary, this Court should find those cases unconvincing.

**C.      AS AN INTENDED THIRD PARTY BENEFICIARY, BLACKWOOD HAS
         ALLEGED SUFFICIENT FACTS TO SUPPORT HIS BREACH OF IMPLIED
         COVENANT OF GOOD FAITH AND FAIR DEALING AND  BREACH OF
         CONTRACT CLAIMS  IN COUNTS II AND III.**

Defendants contend that HAMP is a wholly voluntary program under which it is not

obligated to modify the loans.  This assertion is only partially true, in that the servicers are not

obligated by the terms of the SPA to modify any particular loan.  Servicers are, however,

explicitly required to consider borrowers for loan modifications and to follow the HAMP

guidance and supplemental directives.  Supplemental Directive 09-01 states "servicers should not

proceed with a foreclosure sale until the borrower has been evaluated for the program…".

Exhibit 2 at 14.  In the instant case, Wells blatantly ignored Supplemental Directive 09-01 when

it wrongfully foreclosed on Blackwood's mortgage while considering his HAMP application.

Since Supplemental Directive 09-01 was explicitly incorporated into the SPA, the violation

constitutes a breach of contract.  See also  Exhibit 1, at 6(A)(1) (defining a default as the Servicer

failing to "perform or comply with any of its material obligations under the Agreement").

Likewise, Wells' violation of HAMP guidance breached the implied covenant of good

faith and fair dealing. There is an implied obligation in every contract that the parties act in good

faith and deal fairly with one another. *Warner Ins. Co. v. Comm'r of Ins*., 406 Mass. 354, 362 n.9

(1990). The implied covenant of good faith and fair dealing is breached when either party to the

contract acts in a way that would "have the effect of destroying or injuring the right of the other

party to receive the fruits of the contract." *Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 471-472 (1991).

Since Blackwood is an intended third party beneficiary to the SPA, he has the right to enforce the terms of the SPA.  Therefore, he has plead sufficient facts to support his breach of contract claims under Counts II and III.

**D.    THE COMPLAINT CLEARLY STATES A CLAIM FOR VIOLATION OF M.G.L. C. 93A INDEPENDENT OF ANY HAMP VIOLATION**

M.G.L. c. 93A makes unlawful any "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  M.G.L. c. 93A, §2(a). "A practice may be deceptive if it reasonably could be found to have caused the plaintiff to act differently than he otherwise would have acted." *Duclersaint v. Federal Nat. Mortg. Ass'n*, 427 Mass. 809, 814 (1998). Under M.G.L. c. 93A, "unfairness" is determined from the circumstances. *Id.*  Massachusetts Courts have long held that the phrase "unfair or deceptive" is intentionally broad and flexible.  *Commonwealth v. DeCotis,* 366 Mass. 234, 242 (1974). Furthermore, a practice is unfair if it falls within an established concept of unfairness, is unethical or oppressive, or causes substantial injury to consumers. See Code of Massachusetts Regulations, 940 CMR § 3.16.

It is well-established that M.G.L. c. 93A provides redress for unfair and deceptive business practices even where there is no independent remedy.  Courts have routinely found violations of M.G.L. c.93A as result of violation of other statutes that in-and-of -themselves provide no independent cause of action.  *Dodd v. Commercial Union Ins. Co.,* 365 N. E. 2d 802 (Mass. 1977) ( insurance claim denial under M.G.L. c.175D); *Hernshaw v. Enterprise Rent-A-Car Co.,* 840 N.E.2d 526, 528 (Mass. 2006) ( rental car collision- damage waiver statute, M.G.L. c.90). In their motion, Defendants erroneously argue that Mr. Blackwood's M.G.L. c. 93A

claims are an attempted "end-run" around HAMP's alleged lack of private right action. This argument is a red herring, and fails to address any of the substantive issues as to unfair and deceptive practices raised in the complaint.

It is clear from the complaint that Blackwood has pled a claim under M.G.L. c. 93A independent from  claims to enforce HAMP.  Defendants made "repeated false assurances that … foreclosure would be postponed while [Mr. Blackwood] was being considered for a HAMP modification, [which] caused Mr. Blackwood to believe there would be no foreclosure on December 7, 2009, precluding him from taking other lawful steps to prevent the foreclosure sale." Compl. at ¶ 65. Defendants' false assurances and subsequent wrongful foreclosure on his home are precisely the type of unfair and deceptive practices and acts prohibited by M.G.L. c. 93A. See, *e.g.*, *Kattar v. Demoulas*, 433 Mass. 1, 13 (2000) (A M.G.L. c. 93A action may lie "where foreclosure of a mortgage, even on an actual default, is conducted in bad faith to the detriment of the mortgagor,"); *Morse v. Mutual Fed. Savings and Loan Assoc. of Whitman*, 536 F. Supp. 1271, 1282 (D. Mass. 1982) (wrongful initiation of foreclosure proceedings colorable under M.G.L. c. 93A).

Defendants' rely on an unreported, out-of-jurisdiction case, *Aleem v. Bank of America*, No. 09-cv-01812, 2010 WL 532330 (C. D. Cal. Feb. 9, 2010) for the proposition that if there is no private right of action, a state consumer protection law cannot provide relief for the same underlying conduct.  Defendants' cite dicta from this case, stating that the California Business and Professional Code ("UCL") "cannot create a private right of action where none exists under the federal statute." *Id* at *3. Importantly, the level of proof required to show a violation of the UCL is much higher than under M.G.L. c. 93A. The UCL requires a plaintiff to show that the

Defendant "engaged in a business practice that is unlawful, unfair, or fraudulent." *Aleem*, 2010 WL 532330 at *3.

Unlike the plaintiff in *Aleem*, Blackwood can show that Wells engaged in unfair and deceptive practice by promising to postpone the foreclosure and failing to do so.  Because Blackwood relied on this promise, he did not take other affirmative action to stop the foreclosure.  Thus, he has made a colorable claim under M.G.L. c.93A and Count I should not be dismissed.

### CONCLUSION

Based on the intent of the HAMP program, the specific HAMP directives, the SPA, and the benefits accruing to borrowers under the SPA and HAMP directives, it is difficult to discern any purpose of the SPA between Defendant Wells and the Treasury Department, other than to benefit borrowers like Plaintiff Blackwood. Therefore Plaintiff is clearly an intended beneficiary, has the right to enforce Defendants non-compliance with HAMP, and has pled sufficient facts to allege Consumer Protection Act claims, and therefore, Defendants' Motion for Judgment on the Pleadings should be denied.[5]

Respectfully Submitted,

MICHAEL BLACKWOOD,
By his attorneys,

Date: December  6, 2010

_/s/ Nadine Cohen _____
Nadine Cohen, BBO #090040
Meg Rehrauer, BBO # pending
Greater Boston Legal Services
197 Friend Street
Boston, MA  02114
(617) 603-1734
ncohen@gbls.org

---

[5] In the alternative, Plaintiff requests permission to amend his complaint to more clearly set forth his claims.

## <u>CERTIFICATE OF SERVICE</u>

I, Meg Rehrauer, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.


Dated: December 6, 2010                          /s/ Meg Rehrauer_____